**TIMOTHY A. SCOTT**
California Bar No. 215074
LAW OFFICES OF TIMOTHY A. SCOTT
1350 Columbia Street, Suite 600
San Diego CA, 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
email: timscottlaw@cox.net

Attorneys for Reymundo Reyes-Chacon

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Reymundo Reyes-Chacon<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08cr0894-DMS<br><br>Date: May 9, 2008<br>Time: 2:00 p.m.<br><br>**MEMORANDUM IN SUPPORT OF MOTIONS** |

# I.

# Introduction

**A. *Miranda* Motion:**

*Miranda v. Arizona* teaches that when a suspect invokes his right to remain silent, all questioning must cease immediately, and the invocation of rights must be "scrupulously honored." On two separate occasions, Mr. Reyes-Chacon invoked his right to have an attorney present during his interrogation, but agents deliberately continued to question him. He asks that the statements that followed be excluded from trial.

**B. Other Motions.**

In these motions, Mr. Reyes-Chacon also seeks to compel discovery, and to obtain a voluntariness hearing to litigate his statements motion.

//

//

//

## II.

## Statement of Facts

On March 15, 2008, Mr. Reyes-Chacon was placed under arrest at the San Ysidro port of entry. Two officers, Rosario and Gonzalez, interrogated Mr. Chacon for suspicion of alien smuggling. They told Mr. Chacon he was under arrest, and read him his *Miranda* rights in Spanish.[1]

A transcript of the videotaped interrogation reveals that Mr. Reyes-Chacon stated that he understood his rights, twice invoked his right to counsel, but had his invocation ignored by interrogating agents. The relevant portions of the interview are as follows:

| | |
|---|---|
| Officer Rosario: | [W]e want to talk to you about the situation that went on today but first I'm going to explain that you're under arrest for Code 8 of the United States Law, number 1324, for bringing undocumented people to the country, to the United States. I'm going to read you your rights in Spanish. I need you to understand your rights. If you understand each right, say yes, if you don't, then say you don't and we'll explain it to you again, okay? |
| Reyes-Chacon: | Yes. |
| Officer Rosario: | You have the right to remain silent, understand? |
| Reyes-Chacon: | Yes. |
| Officer Rosario: | Anything you say can be used against you in a court of law or any administrative or immigration proceeding. Understand? |
| Reyes-Chacon: | Yes. |
| Officer Rosario: | You have the right to speak to an attorney so that he can advise you before we ask you any questions and to have him present during questioning. Understand? |
| Reyes-Chacon: | [Nods yes]. |
| Officer Rosario: | Yes? |
| Reyes-Chacon: | [Nods yes]. |
| Officer Rosario: | If you don't have money to hire an attorney one can be appointed to you before we ask any questions, if you desire. Understand? |
| Reyes-Chacon: | Yes. |

[1] See Attached Exhibit A, Page 2.

Officer Rosario: If you decide to answer our questions now without having an attorney present you always have the right to continue answering whenever you'd like until you can speak with an attorney. Understand?

Reyes-Chacon: [Nods yes].

Officer Rosario: Do you understand all your rights? Do you have any questions about your rights?

Reyes-Chacon: Well, yes, I understand all of them.

Officer Rosario: You understand them all?

Reyes-Chacon: Mm-hmm.

Officer Rosario: Your name is Raymundo-

Reyes-Chacon: Raymundo-

Officer Rosario: Raymundo-

Reyes-Chacon: Israel Reyes Chacon.

Officer Rosario: If you understand your rights just as I've read them, I need you to sign here, just indicating that you understand your rights. Can you read this out loud? And tell me if you agree with that.

Reyes-Chacon: I need my glasses.

Officer Rosario: You need your glasses? Are these them?

Reyes-Chacon: Yes. I've read this declaration about my rights and I understand what they are.

Officer Rosario: Do you agree? That means that you understand your rights. Okay. We're at the San Ysidro port of entry, it's March 15, 2008. Okay, um, **now that you understand your rights**, are you going to want to speak with us?[2] Are you willing to speak with us? [And] explain what's going on?

Reyes-Chacon: ***I would need an attorney but*** . . . [3]

Officer Rosario: No, one of your rights is that if you don't have the right to an attorney-

Officer Rosario: [Overlapping Voices] -one

Officer Gonzalez: the government will provide you with one. Now, our question is - do you understand your rights or should we read them to you again?

Officer Rosario: Do you want us to read them to you again so that you can understand them?

---

[2] (Emphasis provided).

[3] (Emphasis provided).

Reyes-Chacon: ***No, well, don't ask anything if I don't have an attorney and . . .*** [4]

Officer Rosario: Well, that's one of your rights, it's your decision [Overlapping Voices]

Officer Gonzalez: You can exercise your right -

Officer Rosario: If you want to speak with us before you have an attorney. Or if you don't want to answer one of our questions during questioning, just say "Okay, I can't answer that question". But, I mean, now we're going to read your rights again, okay? Because I feel like you kind of do and don't understand them. Are you sure you understand them? It's very important okay?

Officer Gonzalez: Which is the one you don't understand?

Officer Rosario: Read all of them to him, at once.

Officer Gonzalez: Okay. You have the right to remain silent....[5]

Mr. Reyes-Chacon subsequently gave a statement. These motions follow.

## III.

## Discussion

**A. This Court should suppress Mr. Reyes-Chacon's post-arrest statements because government agents deliberately failed to "scrupulously honor" the invocation of his right to counsel.**

"Once [*Miranda*] warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." [6] Any statements resulting from interrogation thereafter are involuntary and inadmissible as a matter of law: "At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."[7] Since deciding *Miranda* itself, the Supreme Court has held that "the admissibility of statements

---

[4] (Emphasis provided).

[5] See Exhibit A at Pages 2-4.

[6] *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966) .

[7] *Id.*

obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'"[8] "Where the initial request to stop the questioning is clear, 'the police may not create ambiguity in a defendant's desire by continuing to question him or her about it.'"[9]

During this interrogation, Mr. Reyes-Chacon attempted to invoke his right to counsel on two occasions. On each occasion, as soon as the word "attorney" came out of his mouth, one or both of the officers prevented Mr. Chacon from finishing his sentence, refusing to listen to or acknowledge Mr. Chacon's invocations.[10]

The government cannot claim that officers were attempting to clarify whether Mr. Reyes was actually invoking his rights – they never asked him if he was invoking, and he had already indicated several times that he understood his rights. As an agent himself stated, "[O]kay, um, now that you understand your rights, are you going to want to speak with us?"[11]

After Mr. Reyes-Chacon twice invoked his right to counsel, the interrogation continued. Both officers began to pepper him with questions, ignoring his invocations and his right to counsel. Under any standard, the agents violated Miranda, and the statements should be suppressed.

The government should not have the benefit of the statements for impeachment, either, because they were involuntary as a matter of law. When a person invokes their rights, "he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or

---

[8] *Michigan v. Mosley*, 423 U.S. 96, 103-104 (1975).

[9] *Anderson v. Terhune*, 516 F.3d 781, 790 (9th Cir. 2008) (en banc) (quoting *Connecticut v. Barrett*, 479 U.S. 523, 535 n. 5 (1987) (Brennan, J., concurring)).

[10] See Exhibit A.

[11] *See* Exhibit A at page 3.

otherwise."[12] The agents' deliberate violation of *Miranda* rendered any subsequent statements involuntary as a matter of law. The government should not be permitted to use them for any purposes at trial.

**B. Mr. Reyes-Chacon requests a statements hearing.**

Exhibit A to these motions demonstrate a *per se* violation of the Fifth Amendment. Mr. Reyes-Chacon is requesting suppression of evidence not only in the government's case-in-chief, but for impeachment purposes as well. He has set forth ample facts necessitating a hearing. He respectfully requests a evidentiary hearing to develop the record on his *Miranda* and voluntariness issues.

**C. Motion for discovery.**

Mr. Reyes-Chacon moves for the production by the government of the following discovery and for the preservation of evidence. This request is not limited to those items about which the prosecutor knows, but includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency. *See generally Kyles v. Whitley,* 514 U.S. 419 (1995); *United States v. Bryan,* 868 F.2d 1032 (9th Cir. 1989).

1. The Defendant's Statements. The government must disclose to Mr. Reyes-Chacon *all* copies of any written or recorded statements made by Mr. Reyes-Chacon; the substance of any statements made by Mr. Reyes-Chacon that the government intends to offer in evidence at trial; any response by Mr. Reyes-Chacon to interrogation; the substance of any oral statements that the government intends to introduce at trial and any written summaries of Mr. Reyes-Chacon's oral statements contained in the handwritten notes of the government agent; any response to any *Miranda* warnings that may have been given to Mr. Reyes-Chacon; and any other statements by Mr. Reyes-Chacon. Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal *all* of Mr. Reyes-Chacon's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

---

[12] Anderson v. Terhune 516 F.3d 781, 784 (9th Cir. 2008) (en banc) (citing the Miranda decision).

2. Arrest Reports, Notes and Dispatch Tapes. Mr. Reyes-Chacon also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning, if such reports have not already been produced *in their entirety*, be turned over to him. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Reyes-Chacon or any other discoverable material is contained. Mr. Reyes-Chacon includes in this request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROI's that the case agent or any other agent has written. This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and *Brady v. Maryland,* 373 U.S. 83 (1963). *See also Loux v. United States,* 389 F.2d 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Reyes-Chacon are available under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(I). Preservation of rough notes is requested, whether or not the government deems them discoverable.

3. *Brady* Material. Mr. Reyes-Chacon requests all documents, statements, agents' reports, and tangible evidence favorable to him on the issue of guilt and/or evidence that affects the credibility of the government's case. Impeachment and exculpatory evidence both fall within *Brady's* definition of evidence favorable to the accused. *United States v. Bagley,* 473 U.S. 667 (1985); *United States v. Agurs,* 427 U.S. 97 (1976).

4. Any Information That May Result in a Lower Sentence. As discussed above, any information that may result in a more favorable sentence must also be disclosed pursuant to *Brady,* 373 U.S. 83. The government must disclose any cooperation or attempted cooperation by Mr. Reyes-Chacon, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. Also included in this request is any information relevant to a Chapter Three adjustment, a determination of Mr. Reyes-Chacon's criminal history, or any other application of the Guidelines.

5. The Defendant's Prior Record. Evidence of a prior record is discoverable under Fed. R. Crim. P. 16(a)(1)(D). Mr. Reyes-Chacon specifically requests a complete copy of any

criminal record.

6. Any Proposed 404(b) Evidence. Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh,* 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); *see also United States v. Brooke,* 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming *Mehrmanesh* and reversing convictions).

7. Evidence Seized. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

8. Request for Preservation of Evidence. The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to, any samples of narcotics used to run any scientific tests, all narcotics, the results of any fingerprint analysis, Mr. Reyes-Chacon's personal effects, and any evidence seized from Mr. Reyes-Chacon or any third party.

Mr. Reyes-Chacon requests that the prosecutor be ordered to *question* all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

9. *Henthorn* Material. Mr. Reyes-Chacon requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent (including local and state authorities) involved in the present case for impeachment material. *See Kyles v. Whitley,* 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); *United States v. Henthorn,* 931 F.2d

29 (9th Cir. 1991). This request includes, but is not limited to, any complaints filed (by a member of the public, by another agent, or any other person) against the agent, whether or not the investigating authority has taken any action, as well as any matter for which a disciplinary review was undertaken, whether or not any disciplinary action was ultimately recommended. Mr. Reyes-Chacon further requests production of any such information at least *one week* prior to the motion hearing and two weeks prior to trial. If the prosecutor is uncertain whether certain information should be disclosed pursuant to this request, this information should be produced to the Court in advance of the motion hearing and the trial for an *in camera* inspection.

10. Tangible Objects. Mr. Reyes-Chacon requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Reyes-Chacon . Fed. R. Crim. P. 16(a)(1)(E). Specifically, Mr. Reyes-Chacon requests **color copies** of all photographs in the government's possession of the alleged narcotics.

11. Expert Witnesses. Mr. Reyes-Chacon requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s). *See United States v. Duvall,* 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered and failed to identify what opinion the expert would offer on those subjects).

Mr. Reyes-Chacon requests the notice of expert testimony be provided at a minimum of *six prior to trial* so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any expert. *See Kumho v. Carmichael Tire Co.,* 526 U.S. 137, 119 S.Ct. 1167,

1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12. Impeachment evidence. Mr. Reyes-Chacon requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Reyes-Chacon. *See* Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under *Brady,* 373 U.S. 83. *See* *United States v. Strifler,* 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); *Thomas v. United States,* 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

13. Evidence of Criminal Investigation of Any Government Witness. Mr. Reyes-Chacon requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. *United States v. Chitty,* 760 F.2d 425 (2d Cir. 1985).

14. Evidence of Bias or Motive to Lie. Mr. Reyes-Chacon requests any evidence that any prospective government witness is biased or prejudiced against Mr. Reyes-Chacon, or has a motive to falsify or distort his or her testimony. *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987); *Strifler,* 851 F.2d 1197.

15. Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity. Mr. Reyes-Chacon requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. *Strifler,* 851 F.2d 1197; *Chavis v. North Carolina,* 637 F.2d 213, 224 (4th Cir. 1980).

16. Witness Addresses. Mr. Reyes-Chacon requests the name and last known address of each prospective government witness. *See United States v. Napue,* 834 F.2d 1311 (7th Cir. 1987); *United States v. Tucker,* 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); *United States v. Cook,* 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). Mr. Ortiz also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in

furtherance thereof) who will *not* be called as a government witness. *United States v. Cadet,* 727 F.2d 1453 (9th Cir. 1984).

17. Names of Witnesses Favorable to the Defendant. Mr. Reyes-Chacon requests the name of any witness who made any arguably favorable statement concerning Mr. Reyes-Chacon or who could not identify him or who was unsure of his identity or participation in the crime charged. *Jackson v. Wainwright,* 390 F.2d 288 (5th Cir. 1968); *Chavis,* 637 F.2d at 223; *Jones v. Jago,* 575 F.2d 1164,1168 (6th Cir.1978); *Hudson v. Blackburn,* 601 F.2d 785 (5th Cir. 1979), *cert. denied,* 444 U.S. 1086 (1980).

18. Statements Relevant to the Defense. Mr. Reyes-Chacon requests disclosure of any statement that may be "relevant to any possible defense or contention" that she might assert. *United States v. Bailleaux,* 685 F.2d 1105 (9th Cir. 1982).

19. Jencks Act Material. Mr. Reyes-Chacon requests production in advance of the motion hearing or trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2 Advance production will avoid the possibility of delay of the motion hearing or trial to allow Mr. Reyes-Chacon to investigate the Jencks material. Mr. Reyes-Chacon requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

20. *Giglio* Information. Pursuant to *Giglio v. United States,* 405 U.S. 150 (1972), Mr. Reyes-Chacon requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.

21. Agreements Between the Government and Witnesses. Mr. Reyes-Chacon requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning

any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

22. Informants and Cooperating Witnesses. Mr. Reyes-Chacon requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Reyes-Chacon. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. *Roviaro v. United States,* 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants that exculpates or tends to exculpate Mr. Reyes-Chacon.

23. Bias by Informants or Cooperating Witnesses. Mr. Reyes-Chacon requests disclosure of any information indicating bias on the part of any informant or cooperating witness. *Giglio,* 405 U.S. 150. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24. Personnel Records of Government Officers Involved in the Arrest. Mr. Reyes-Chacon requests all citizen complaints and other related internal affairs documents involving any of the federal, state or local law enforcement officers who were involved in the investigation, search, arrest and interrogation of Mr. Reyes-Chacon. *See Pitchess v. Superior Court,* 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

25. Opportunity to View the A-file. Mr. Reyes-Chacon hereby requests an opportunity to view, photograph, and copy the A-file in this case.

26. Reports of Scientific Tests or Examinations. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), Mr. Reyes-Chacon requests the reports of all tests and examinations conducted upon the evidence in this case, including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and that are material to the preparation of the defense or are

intended for use by the government as evidence in chief at the trial.

27. Residual Request. Mr. Reyes-Chacon intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16.

Mr. Reyes-Chacon requests that the government provide the above requested material sufficiently in advance of trial and the next motion hearing date.

## IV.

## Conclusion

For the foregoing reasons, these motions should be granted.

Dated: April 25, 2008

Respectfully submitted,

*s/ Timothy A. Scott*

**TIMOTHY A. SCOTT**

Attorneys for Mr. Reyes-Chacon