KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant U.S. Attorney
California State Bar No. 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>RAYMUNDO ISRAEL REYES-CHACON,<br><br>Defendant | Criminal Case No. 08CR0894-DMS<br><br>Date: May 9, 2008<br>Time: 2:00 p.m.<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO: COMPEL DISCOVERY AND SUPPRESS STATEMENTS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES AND MOTION FOR RECIPROCAL DISCOVERY** |

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina McCall, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's above-referenced motions. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

//

//

//

//

I

**STATEMENT OF THE CASE**

On March 26, 2008, a federal grand jury in the Southern District of California returned a two-count indictment against Defendant Raymundo Israel Reyes-Chacon ("Defendant"). The Indictment charges Defendant with one count of bringing an illegal alien into the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and one count of bringing in an illegal alien without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). On April 29, 2008, the parties conducted a videotaped deposition of the material witness.

On April 25, 2008, Defendant filed the above-captioned motions. The United States files the following response.

II

**STATEMENT OF FACTS**

**A. The Offense Conduct**

On March 15, 2008, around 5:50 a.m., Defendant drove into the primary inspection area at the San Ysidro port of entry. Defendant was the sole visible occupant of a blue Ford Taurus with California license plates. Defendant presented a Permanent Resident Card belonging to someone else and claimed he was the person depicted on the card. Defendant stated that he was going to San Diego and was not bringing anything back from Mexico. While inspecting the interior of the car, the inspector reached under the rear seat and discovered a non-factory compartment with at least one person inside. The inspector requested assistance and placed handcuffs on Defendant. Other officers escorted Defendant and the Taurus to the secondary inspection area.

During secondary inspection, after Defendant had been taken to the office, officers removed the rear car seat to extricate the person underneath. That person was material witness Juan Mejorado-Pena. The seat was held in place by non-factory metal hooks. The compartment was constructed in the area where the Taurus' gas tank should have been. Instead, the gas tank was removed, and a small alternate gas tank was mounted in the right rear door, which could not open. The Taurus did not need a key in the ignition in order to run.

**B. Defendant's Statements**

At approximately 9:39 a.m., Customs and Border Protection ("CBP") Officer Jorge Rosario advised Defendant of his Miranda rights in Spanish. Defendant initially displayed some confusion about the Miranda rights, so the agents repeated the entire advisement. Defendant then acknowledged each of his rights, and signed the form indicating that he was willing to answer the officer's questions. The transcription that Defendant attached to his motion to suppress statements is riddled with errors and is inaccurate. Defense counsel acknowledged that the transcription was a rough draft, even though there was no indication in the suppression motion that the transcription extensively quoted in the body of the motion was inaccurate and preliminary. Defense counsel indicated that a certified court interpreter is currently preparing an accurate transcription of the Miranda advisement.

Defendant indicated he was a Mexican citizen who had lived in the United States about eleven years ago. Defendant also indicated he was convicted of a narcotics violation, and, as a result, his application for residency was denied and he was deported from the United States. Defendant indicated he was pursuing a pardon for that offense.

Defendant stated that both of his parents are permanent residents of the United States and live in Riverside. Defendant indicated he has lived in Ensenada since he was deported. Defendant indicated he is employed as a bus driver, and was in desperate need of money. Defendant claimed that he recently encountered an old friend named Turi in Tijuana. Defendant said he knew Turi from his prior residency in the United States eleven years ago, and that he and Turi were involved with drugs at that time.

Defendant claimed that he had a conversation with Turi about his desire to return to the United States, and Turi offered to help Defendant illegally enter this country. Defendant said Turi got him a permanent resident card bearing someone else's name and a Ford Taurus. Defendant said that Turi also gave him a working cellular telephone to communicate with Turi. Defendant said he would pay 200 United States dollars to use the false document provided by Turi.

Defendant said he planned to drive north and exit the freeway three exits past the port of entry. Defendant said he planned to park the Taurus at a shopping mall and phone Turi to inform Turi of the Taurus's location. Defendant planned to leave the false immigration document and the Taurus and continue to Riverside alone. Defendant denied knowledge of a person concealed inside the Taurus and

denied that he was receiving compensation for smuggling a person into this country. Agents informed Defendant that his story did not make sense and urged him to be truthful. At about 10:22 a.m., Defendant invoked his right to remain silent.

**D. The Material Witness' Statements**

Juan Mejorado-Pena, the material witness, was interviewed in the Spanish language. In his interview, Mejorado admitted that he was born in Durango, Mexico and remains a citizen of Mexico. Mejorado said that he possessed no legal documents to enter or remain in the United States. Mejorado said that he made arrangements to pay $3000 to be smuggled into the United States. Mejorado indicated that he met a man named Lopez in a shopping plaza in Tijuana who offered to take him illegally across the border. Mejorado went to a house where he waited to be brought across. Mejorado said that he did not see the driver, and that Lopez, the man with whom he made the smuggling arrangements, put him into the compartment under the rear seat. Mejorado indicated that he believed he could get out of the compartment in case of an emergency, since he saw two locks underneath the seat. Mejorado said the driver never spoke to him.

On April 24, 2008, Judge Battaglia held a hearing on Mejorado's motion to conduct a material witness deposition. Judge Battaglia granted the motion and scheduled the deposition for April 29. Prior to the deposition, the United States provided Defendant with documents relating to Mejorado's conviction for misdemeanor domestic violence in Riverside county, and an apprehension that took place on March 10, 2008 at the border.

On April 29, 2008, pursuant to a court order, the parties met for a videotaped deposition of Mejorado. Prior to the deposition, during a witness preparation session, Mejorado indicated that Lopez pointed out the person who would drive Mejorado across the border. Lopez, Mejorado and Defendant were all present in the loading house just a couple of hours prior to the smuggling trip when Lopez identified Defendant as Mejorado's driver. Mejorado described the man who was to be his driver as quite tall, with glasses, a moustache, and dark hair with some grey. From a six-pack photographic lineup, Mejorado identified Defendant as the man Lopez said would be his driver shortly before Mejorado climbed into the Taurus' backseat compartment. Mejorado also identified Defendant in person during the deposition.

During the deposition, Mejorado affirmed that he was a Mexican citizen, with no legal right to enter the United States. Mejorado explained that Lopez's organization attempted to smuggle him into the United States on March 10, 2008, by providing a false document and taking him through the pedestrian line at the San Ysidro port of entry. Mejorado was caught by officers, voluntarily removed to Mexico, and again contacted Lopez. Mejorado returned to the smuggling house, where he agreed to pay $3,500 in order to be brought across the border inside a car. Mejorado remained in the house for about a day and a half, until Lopez took him outside, showed Mejorado the blue Taurus, and held the seat up to demonstrate the compartment. Lopez told Mejorado if officers found him to claim he does not know anyone. Lopez also said Mejorado should not get out of the compartment until the driver told him to exit.

Mejorado said the Taurus stopped twice on the way to the port of entry. During the second stop, Mejorado asked for permission to remove his sweater. A blond man who was in the front passenger's seat lifted the rear sear and allowed Mejorado to remove his sweater. During this time, Mejorado did not look at the driver. The blond man then exited the vehicle, and told Mejorado and the driver not to get nervous. Finally, the blond man spoke with the driver about whether there were sufficient minutes available on the cellular phone.

## III

## THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS

### A. DEFENDANT'S STATEMENTS SHOULD NOT BE SUPPRESSED

______Defendant moves to suppress all statements made to government officials on the basis of an alleged Miranda violation. Moreover, Defendant requests an evidentiary hearing to establish the facts and aid this Court in deciding this suppression motion. As explained above, the transcription of the Miranda warnings attached to the suppression motion is extremely inaccurate. Because a correct version is being prepared by certified court interpreters, this motion should be continued until all relevant facts are before this court.

### B. ORDER COMPELLING DISCOVERY IS UNNECESSARY

______No Order is Required; The United States is Complying With Discovery Obligations

______The United States has produced 139 pages of discovery as of the filing of this response, as well

as a digital video recording Defendant's post-arrest Miranda statement and the interview with the material witness. The United States has produced a significant number of color photographs and has made the physical evidence available for defense inspection and photographs. The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

1. Defendant's Statements

Defendant has already been provided with copies of reports detailing his statements prior to being taken into custody. Additionally, Defendant has a video recording of his post-arrest invocation.

2. Arrest Reports, Notes and Dispatch Tapes

The United States has provided Defendant with all known reports related to Defendant's arrest in this case. The United States is not aware of the existence of any dispatch tapes relevant to this case. The United States will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents that are available at this time. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of any available rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case probably do not constitute "statements" in accordance with the Jencks Act.

See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

3. Brady Material

The United States will comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). Impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).

4. Information that May Result in a Lower Sentence

Defendant did not cooperate or attempt to cooperate with the investigation, and the Government is unaware of any mitigating factors.

5. Defendant's Prior Criminal Record

The United States has already provided copies of Defendant's rap sheet as well as a videotape where Defendant discussed his prior narcotics conviction.

6. 404(b) and 609 Evidence

The United States will disclose in advance of trial the general nature of any "other bad acts" evidence that it intends to introduce at trial pursuant to Federal Rule of Evidence 404(b), and any prior

convictions it intends to use as impeachment pursuant to Rule 609. The discovery materials include numerous references to Defendant's state court criminal cases.

7. Evidence Seized

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. In fact, the government has already made the Taurus available for the defense investigator's inspection.

The United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 583-84 (9th Cir. 1984).

8. Preservation of Evidence

The United States will preserve all evidence to which the defendant is entitled to pursuant to the relevant discovery rules. The United States objects to a blanket request to preserve all physical evidence.

9, 12, 13, 14, 20, 24. Giglio/Henthorn Information

The United States will comply with the requirements of Giglio v. United States, 405 U.S. 150 (1972) and United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by having agencies conduct a review of government agents' personnel files in advance of trial.

10. Tangible Objects

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

11. Expert Witnesses

The United States will comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

12. Impeachment Evidence

Again, the United States understands its obligations under Brady.

14. Evidence of Bias or Motive to Lie

The Government does not have any evidence that any prospective witness is biased or prejudiced against the Defendant, and realizes its obligations under Brady, Giglio and Henthorn.

15. Evidence Affecting Perception and Memory

The United States is unaware of any evidence that any government witness's physical ability to perceive, recollect or communicate or commitment to tell the truth is impaired. The United States opposes the request for information that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. This request is overly broad and ignores the standard of materiality set forth in Brady for exculpatory or impeachment information.

16. Witness Addresses

The United States will provide the names of the witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States objects to Defendant's request for witness addresses. None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. The United States does not know of any individuals who were witnesses to Defendant's offenses except the law enforcement agents who apprehended him. The names of these individuals have already been provided to Defendant.

17. Witnesses Favorable to Defendant

As indicated above, the United States will comply with its discovery obligations to produce information that is exculpatory to Defendant, although it has discovered no such information as of this date. To the extent that it discovers such information, the United States will provide information about witnesses who made favorable statements about Defendant.

18-19. Jencks Act Material / Statements

The United States has or will comply with the disclosure requirements of the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded

transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). By the same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

21-23. Cooperating Witnesses / Agreements With Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). These threshold requirements have been interpreted to require that, if any cooperating witnesses or informants were involved or become involved, Defendant must show that disclosure of the informer's identity would be "relevant and helpful" or that the informer was the sole percipient witness before he would even be entitled to an in-camera evidentiary hearing regarding disclosure of the informer's identity. United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386-87 (9th Cir. 1991), quoting Roviaro v. United States, 353 U.S. 53, 60 (1957). The Government does not have any agreements that would benefit any witness it plans to call at trial. The material witness was detained involuntarily pursuant to 8 U.S.C. § 1324; he has not been promised any benefits by the government.

24. Examination of Law Enforcement Personnel Files

The United States will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection

and review.

Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30- 31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review the personnel files.

25. Viewing the A-file

Presumably, Defendant seeks to review the material witness' alien file. The documents from that file have already been provided as discovery.

26. Scientific Tests

Pursuant to Fed. R. Crim. P. 16, the government will provide any reports of scientific tests or experiments in advance of trial.

## IV

## UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY

Defendant has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Defendant to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends to call as a witness. The United States also requests that the court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all

witnesses, except Defendant. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. The United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

**V**

**CONCLUSION**

For the above stated reasons, the United States respectfully requests that Defendant's motions be denied, except where unopposed, and its reciprocal discovery motion be granted.

DATED: May 6, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ ***Christina M. McCall***

CHRISTINA M. McCALL
Assistant U.S. **Attorney**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. RAYMUNDO ISRAEL REYES-CHACON, Defendant. | Criminal Case No. 08CR0894-DMS<br><br>CERTIFICATE OF SERVICE |

**IT IS HEREBY CERTIFIED that:**

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Tim Scott, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2008

/s/ ***Christina M. McCall***
CHRISTINA M. McCALL