KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant U.S. Attorney
California State Bar No. 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>RAYMUNDO ISRAEL REYES-CHACON,<br><br>Defendant | Criminal Case No. 08CR0894-DMS<br><br>Date: May 9, 2008<br>Time: 2:00 p.m.<br><br>**UNITED STATES' SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO: SUPPRESS STATEMENTS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina McCall, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's above-referenced motions. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

//

//

//

//

## I

## STATEMENT OF THE CASE

On March 26, 2008, a federal grand jury in the Southern District of California returned a two-count indictment against Defendant Raymundo Israel Reyes-Chacon ("Defendant"). The Indictment charges Defendant with one count of bringing an illegal alien into the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and one count of bringing in an illegal alien without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). On April 29, 2008, the parties conducted a videotaped deposition of the material witness.

The evidentiary hearing for Defendant's suppression motion is scheduled for July 24, 2008. Defendant filed a supplemental transcript of the post-arrest interview on June 5, 2008.

## II

## STATEMENT OF FACTS

### A. The Offense Conduct

On March 15, 2008, around 5:50 a.m., Defendant drove into the primary inspection area at the San Ysidro port of entry. Defendant was the sole visible occupant of a blue Ford Taurus with California license plates. Defendant presented a Permanent Resident Card belonging to someone else and claimed he was the person depicted on the card. Defendant stated that he was going to San Diego and was not bringing anything back from Mexico. While inspecting the interior of the car, the inspector reached under the rear seat and discovered a non-factory compartment with at least one person inside. The inspector requested assistance and placed handcuffs on Defendant. Other officers escorted Defendant and the Taurus to the secondary inspection area.

During secondary inspection, after Defendant had been taken to the office, officers removed the rear car seat to extricate the person underneath. That person was material witness Juan Mejorado-Pena. The seat was held in place by non-factory metal hooks. The compartment was constructed in the area where the Taurus' gas tank should have been. Instead, the gas tank was removed, and a small alternate gas tank was mounted in the right rear door, which could not open. The Taurus did not need a key in the ignition in order to run.

**B. Defendant's Statements**

At approximately 9:39 a.m., Customs and Border Protection ("CBP") Officer Jorge Rosario advised Defendant of his Miranda rights in Spanish. Defendant initially displayed some confusion about the Miranda rights, so the agents repeated the entire advisement. Defendant then acknowledged each of his rights, and signed the form indicating that he was willing to answer the officer's questions. The transcription that Defendant attached to his motion to suppress statements is riddled with errors and is inaccurate. Defense counsel acknowledged that the transcription was a rough draft, even though there was no indication in the suppression motion that the transcription extensively quoted in the body of the motion was inaccurate and preliminary. Defense counsel indicated that a certified court interpreter is currently preparing an accurate transcription of the Miranda advisement. In fact, the accurate transcription was filed on June 5, 2008.

Defendant indicated he was a Mexican citizen who had lived in the United States about eleven years ago. Defendant also indicated he was convicted of a narcotics violation, and, as a result, his application for residency was denied and he was deported from the United States. Defendant indicated he was pursuing a pardon for that offense.

Defendant stated that both of his parents are permanent residents of the United States and live in Riverside. Defendant indicated he has lived in Ensenada since he was deported. Defendant indicated he is employed as a bus driver, and was in desperate need of money. Defendant claimed that he recently encountered an old friend named Turi in Tijuana. Defendant said he knew Turi from his prior residency in the United States eleven years ago, and that he and Turi were involved with drugs at that time.

Defendant claimed that he had a conversation with Turi about his desire to return to the United States, and Turi offered to help Defendant illegally enter this country. Defendant said Turi got him a permanent resident card bearing someone else's name and a Ford Taurus. Defendant said that Turi also gave him a working cellular telephone to communicate with Turi. Defendant said he would pay 200 United States dollars to use the false document provided by Turi.

Defendant said he planned to drive north and exit the freeway three exits past the port of entry. Defendant said he planned to park the Taurus at a shopping mall and phone Turi to inform Turi of the Taurus's location. Defendant planned to leave the false immigration document and the Taurus and

continue to Riverside alone. Defendant denied knowledge of a person concealed inside the Taurus and denied that he was receiving compensation for smuggling a person into this country. Agents informed Defendant that his story did not make sense and urged him to be truthful. At about 10:22 a.m., Defendant invoked his right to remain silent.

**D. The Material Witness' Statements**

Juan Mejorado-Pena, the material witness, was interviewed in the Spanish language. In his interview, Mejorado admitted that he was born in Durango, Mexico and remains a citizen of Mexico. Mejorado said that he possessed no legal documents to enter or remain in the United States. Mejorado said that he made arrangements to pay $3000 to be smuggled into the United States. Mejorado indicated that he met a man named Lopez in a shopping plaza in Tijuana who offered to take him illegally across the border. Mejorado went to a house where he waited to be brought across. Mejorado said that he did not see the driver, and that Lopez, the man with whom he made the smuggling arrangements, put him into the compartment under the rear seat. Mejorado indicated that he believed he could get out of the compartment in case of an emergency, since he saw two locks underneath the seat. Mejorado said the driver never spoke to him.

On April 24, 2008, Judge Battaglia held a hearing on Mejorado's motion to conduct a material witness deposition. Judge Battaglia granted the motion and scheduled the deposition for April 29. Prior to the deposition, the United States provided Defendant with documents relating to Mejorado's conviction for misdemeanor domestic violence in Riverside county, and an apprehension that took place on March 10, 2008 at the border.

On April 29, 2008, pursuant to a court order, the parties met for a videotaped deposition of Mejorado. Prior to the deposition, during a witness preparation session, Mejorado indicated that Lopez pointed out the person who would drive Mejorado across the border. Lopez, Mejorado and Defendant were all present in the loading house just a couple of hours prior to the smuggling trip when Lopez identified Defendant as Mejorado's driver. Mejorado described the man who was to be his driver as quite tall, with glasses, a moustache, and dark hair with some grey. From a six-pack photographic lineup, Mejorado identified Defendant as the man Lopez said would be his driver shortly before Mejorado climbed into the Taurus' backseat compartment. Mejorado also identified Defendant in

person during the deposition.

During the deposition, Mejorado affirmed that he was a Mexican citizen, with no legal right to enter the United States. Mejorado explained that Lopez's organization attempted to smuggle him into the United States on March 10, 2008, by providing a false document and taking him through the pedestrian line at the San Ysidro port of entry. Mejorado was caught by officers, voluntarily removed to Mexico, and again contacted Lopez. Mejorado returned to the smuggling house, where he agreed to pay $3,500 in order to be brought across the border inside a car. Mejorado remained in the house for about a day and a half, until Lopez took him outside, showed Mejorado the blue Taurus, and held the seat up to demonstrate the compartment. Lopez told Mejorado if officers found him to claim he does not know anyone. Lopez also said Mejorado should not get out of the compartment until the driver told him to exit.

Mejorado said the Taurus stopped twice on the way to the port of entry. During the second stop, Mejorado asked for permission to remove his sweater. A blond man who was in the front passenger's seat lifted the rear sear and allowed Mejorado to remove his sweater. During this time, Mejorado did not look at the driver. The blond man then exited the vehicle, and told Mejorado and the driver not to get nervous. Finally, the blond man spoke with the driver about whether there were sufficient minutes available on the cellular phone.

## III

## THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS

### A. DEFENDANT'S STATEMENTS SHOULD NOT BE SUPPRESSED

______Defendant moves to suppress all statements made to government officials on the basis of an alleged Miranda violation. Now that an accurate transcript of Defendant's post-arrest interview has been prepared by a certified interpreter, this court can evaluate the Miranda warnings and Defendant's response to the warnings.

1. There Was No Miranda Violation; Defendant Was Properly Informed of His Rights and Did Not Clearly Invoke His Right to Counsel

To admit an inculpatory statement made by a defendant during custodial interrogation, the defendant's "waiver of Miranda rights must be voluntary, knowing, and intelligent." United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998). A valid waiver of Miranda rights depends upon the "totality

of the circumstances including the background, experience, and conduct of defendant." Id. "A waiver is voluntary if, under the totality of the circumstances, the confession is the product of a free and deliberate choice rather than coercion or improper inducement." United States v. Doe, 155 F.3d 1070, 1074 (9th Cir. 1998). In this case, Defendant's waiver was the product of a free and deliberate choice. His statements should not be suppressed.

A defendant who invokes his right to counsel must do so unambiguously: "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." Davis v. United States, 512 U.S. 452, 459 (1994).

"A suspect must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect." Davis, 512 U.S. at 459. In Davis, the defendant said "Maybe I should talk to a lawyer." The agents attempted to clarify what Davis meant, and then Davis said, "No, I don't want a lawyer." The Supreme Court found that the statement "maybe I should talk to a lawyer" was not a clear request for an attorney. Id. at 462.

In this case, the post-arrest interview was conducted in Spanish. Defendant was allowed to put on his glasses to read the Miranda form. Defendant was individually read each Miranda right in Spanish, and indicated after each right that he understood. Defendant indicated that he understood everything about the rights that had been read to him. [Transcript "TR" 3.] When Defendant had a question about the attorney, the officers re-read the entire series of Miranda warnings to clarify them for Defendant. The record set forth in the corrected transcript indicates that Defendant's waiver of Miranda rights was the product of a free and deliberate choice.

After acknowledging the warnings, Defendant said, "Uh, well I would need an attorney, but my attorney, well I don't have money for attorney." [TR 5.] The officers responded, "No, one of your rights is that if ... you do not have the [overlapping voices] ... right of an attorney, the government will provide one." [Id.] The officers then offered to re-read the rights to Defendant. [Id.] Defendant said, "It seems

like you don't ask anything more if I don't have a lawyer." [Corrected version of transcript, clarifying portion unintelligible to original interpreter.]

Following that statement, the officers re-read the Miranda rights to Defendant. Defendant indicated that he understood the rights. Then, Defendant indicated he was willing to answer the officers' questions. [Id. at 7.] Defendant read a paragraph that indicated he was not the object of promises, threats, pressure or coercion and agreed that he was not speaking as a result of such pressure.

Similar to the statements in Davis, Defendant's statements were not a clear request for an attorney. Rather, they were vague statements that seem to be seeking clarification about the Miranda rights. Had Defendant unequivocally requested the presence of an attorney, the interview would have ceased, as it did when Defendant indicated he would rather not answer anything. [TR 53.] But vague statements such as, "well, I would need an attorney" and "it seems like you don't ask anything more if I don't have a lawyer" do not qualify as an unambiguous invocation of the right to counsel. A reasonable officer in the circumstances would not understand the statement to be a request for an attorney. The officers immediately re-read the Miranda rights to Defendant after his statements, an entirely proper reaction to Defendant's ambiguous statements.

2. The Statements Were Voluntary

There is no evidence of law enforcement coercion in this case. See United States v. Kelley, 953 F.2d 562, 565 (1992) ("Coercive police activity is 'a necessary predicate' to finding a confession involuntary.") Defendant was interviewed by two Spanish-speaking officers in a well-lit interview room. He was offered water. He was given the opportunity to telephone his mother to let her know he had been apprehended at the port. [TR 58-70.]

The officers informed Defendant why he was under arrest at the start of the interview. When Defendant said, "I'd rather not answer anything," [TR 54] the officers concluded the interview, stating, "That's fine. He doesn't want to answer anything else." [TR 55.] The officers made no threats to Defendant. They did not beat him or subject him to inhumane conditions. The entire interview, including Miranda warnings, only lasted forty minutes, so the length of the interview was not coercive. Defendant is over the age of thirty and indicated he had experience with the American criminal justice system when he was convicted of a narcotics violation and removed from this country. Under the

totality of the circumstances, Defendant's post-arrest statements were voluntary, and should be admitted at trial.

**V**

**CONCLUSION**

For the above stated reasons, the United States respectfully requests that Defendant's motions be denied, except where unopposed, and its reciprocal discovery motion be granted.

DATED: July 18, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ ***Christina M. McCall***

CHRISTINA M. McCALL
Assistant U.S. **Attorney**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>RAYMUNDO ISRAEL REYES-CHACON,<br>Defendant. | Criminal Case No. 08CR0894-DMS<br><br>CERTIFICATE OF SERVICE |

**IT IS HEREBY CERTIFIED that:**

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **SUPPLEMENTAL RESPONSE AND OPPOSITION TO MOTION TO SUPPRESS STATEMENTS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Tim Scott, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 18, 2008

/s/ ***Christina M. McCall***
CHRISTINA M. McCALL